# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **DARVIN MCAFEE, individually and** | § | **Docket No. 4:16-cv-03298** |
| **on behalf of all others similarly situated** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **JURY TRIAL DEMANDED** |
| | § | |
| **PIONEER NATURAL RESOURCES** | § | |
| **COMPANY,** | § | **COLLECTIVE ACTION** |
| | § | **PURSUANT TO 29 U.S.C. § 216(b)** |
| **Defendant.** | § | |

---

## PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION AND COURT-AUTHORIZED NOTICE

---

**Michael A. Josephson**
Fed. Id 27157
State Bar No. 24014780
**Lindsay R. Itkin**
Fed Id. 1458866
State Bar No. 24068647
**Andrew W. Dunlap**
Fed Id. 1093163
State Bar No. 24078444
**Jessica M. Bresler**
Fed Id. 2459648
State Bar No. 24090008
**FIBICH, LEEBRON, COPELAND,**
**BRIGGS & JOSEPHSON**
1150 Bissonnet St.
Houston, Texas 77005
Tel: (713) 751-0025
Fax: (713) 751-0030
mjosephson@fibichlaw.com
litkin@fibichlaw.com
adunlap@fibichlaw.com
jbresler@fibichlaw.com

**Richard J. (Rex) Burch**
Fed. Id. 21615
State Bar No. 24001807
**BRUCKNER BURCH, P.L.L.C.**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Tel: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**

## TABLE OF CONTENTS

TABLE OF EXHIBITS...................................................................................................iii

TABLE OF AUTHORITIES.......................................................................................iv-vi

A.  INTRODUCTION ...........................................................................................1

B.  FACTUAL BACKGROUND .............................................................................2

    1.  Procedural History.................................................................................2

    2.  Relevant Facts......................................................................................2

C.  ARGUMENT & AUTHORITIES ......................................................................4

    1.  Conditional Certification is Warranted When Employees are "Similarly Situated."............4

    2.  The Fifth Circuit Uses the Two-Stage *Lusardi* Approach—a Lenient Notice Standard Typically Resulting in Conditional Certification. ................5

    3.  McAfee is Similarly Situated to Pioneer's Wellsite Consultants. ............8

    4.  Pioneer's Anticipated Argument that Individualized Analyses are Required Does Not Preclude Conditional Certification..............9

    5.  Independent Contractor Misclassification Cases are Well-Suited for Certification...........10

    6.  Merits Issues are Not Relevant to a Decision on Conditional Certification. ....................11

    6.1.  The Wellsite Consultants' Employment Status is a Merits-Based Determination and is Irrelevant at the Conditional Certification Stage.................13

    6.2.  An Analysis of Pioneer's Class-Wide Exemption Defenses is Irrelevant and Premature..................17

D.  NOTICE & CONSENT PROCEDURE ...........................................................19

    1.  The Production of Contact Information and the Issuance of Reminder Notices is Routine in FLSA Collective Actions.............20

    2.  Email Notice Should be Provided to Putative Class Members. ............21

    3.  McAfee Should be Allowed to Follow-up with Select Class Members by Telephone. ......22

    4.  McAfee Should be Allowed to Post Notice at Jobsite Trailers. ............23

E.  CONCLUSION ...........................................................................................23

**TABLE OF EXHIBITS**

| Ex. | Document |
|-----|----------|
| 1 | Decl. of Jose Hernandez |
| 2 | Taylor Safety Offer Letter to Hernandez |
| 3 | U.S. Dept. of Labor's Administrative Interpretation |
| 4 | Notice and Consent Forms, Email Script, Telephone Script |

### TABLE OF AUTHORITIES

## Other Authorities

*Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516 (5th Cir. 2010) ...................................5,7

*Albanil v. Coast 2 Coast, Inc.*, C.A. 4:08-cv-00486, 2008 WL 4937565 (S.D. Tex. Nov. 17, 2008) ............5

*Argo v. Precision Drilling Co., LP*, Civ. A. No. 4:15-CV-00604, 2015 WL 9319233 (S.D. Tex. Dec. 23, 2015) ...............................................................................................................7

*Badgett v. Tex. Taco Cabana, L.P.*, No. Civ. A.H 05–3624, 2006 WL 367872 (S.D. Tex. Feb. 14, 2006) ..7

*Beall v. Tyler Technologies, Inc.*, C.A. 2-08-CV-422, 2009 WL 3064689 (E.D. Tex. Sept. 23, 2009)...........20

*Blake v. Hewlett-Packard Co.*, No. 4:11-CV-592, 2013 WL 3753965 (S.D. Tex July 11, 2013) .................5

*Botello v. COI Telecom, L.L.C.*, C.A. SA-10-CV-305-XR, 2010 WL 5464824 (W.D. Tex. Dec. 30, 2010) ...........................................................................................................................10

*Breaux v. Daigle, Inc. v. United States*, 900 F.2d 49, 52 (5th Cir. 1990) .......................................17

*Bryant v. Am. Commercial Lines, LLC*, G-11-297 (S.D. Tex. Feb. 24, 2012) .................................7

*Cantu v. Vitol, Inc.*, CA H-09-0576, 2009 WL 5195918 (S.D. Tex. Dec. 21, 2009) .................................5

*Coffin v. Blessey Marine Servs., Inc.*, No. H-11-0214 (S.D.Tex. July 28, 2011) .................................5,7-8,11

*Crow v. ProPetro Svcs., Inc.*, C.A. 7:15-cv-00149-RAJ-DC  (W.D. Tex. May 4, 2016) ............................22

*D'Anna v. M/A-Com, Inc.*, 903 F.Supp. 889 (D. Md. 1995).............................................................4

*Davis v. Westgate Planet Hollywood Las Vegas, LLC*, C.A. 2:08-CV-00722-RCJ-PAL, 2009 WL 102735 (D. Nev. Jan. 12, 2009)...........................................................................................20

*Dreyer v. Baker Hughes Oilfield Operations, Inc.,* C.A.. 4:08-cv-01212, 2008 WL 5204149 (S.D. Tex. Dec. 11, 2008) ................................................................................................5,7,18

*Dyson v. Stuart Petroleum Testers, Inc.*, 308 F.R.D. 510 (W..D. Tex. 2015) ............................................. 20, 22

*Foraker v. Highpoint Southwest Servs., L.P.*, CA H- 06-1856, 2006 WL 2585047 (S.D. Tex. Sept 7, 2006) .........................................................................................................5

*Garcia v. Primoris Servs. Corp.*, et al, C.A. 2:14-cv-00198 (S.D. Tex. Nov. 12, 2014) ..............................6

*Garcia v. TWC Admin., LLC*, No. SA:14-CV-985-DAE, 2015 WL 1737932 (W.D. Tex. Apr. 16, 2015) ...............................................................................................23

*Garner v. G.D. Searle*, 802 F. Supp. 418 (M.D. Ala. 1991) .............................................................8

*Gayle v. Harry's Nurses Registry, Inc.*, C.A. 07 Civ. 4672 (CPS)(MDG), 2009 WL 605790 (E.D.N.Y. Mar. 9, 2009) ...............................................................................................11

*Gee v. Suntrust Mortgage, Inc.*, C.A. C-10-1509-RS, 2011 WL 722111 (N.D. Cal. Feb. 18, 2011)............13

*Gibson v. NCRC, Inc.*, No. H-10-1409, 2011 WL 2837506 (S.D. Tex. July 18, 2011) .............................7

*Gonzales v. Tier One Sec., Inc.*, 2013 WL 1455587 (W.D. Tex. Apr. 8, 2013) .........................................14

*Grayson v. K-Mart Corp.*, 79 F.3d 1086 (11th Cir. 1996), 117 S. Ct. 435 (1996).....................................4, 6

*Hansen v. Total Screen Sols., Inc.*, C.A. 2:13-cv-00242 (S.D. Tex. May 27, 2014)...................................10,14

*Heeg v. Adams Harris, Inc.*, 907 F.Supp.2d 856, 862 (S.D. Tex. 2012) ...........................................6,11,14-15

*Herandez v. Taylor Safety Consulting, LLC*, No. 2:16-cv-00198 (S.D. Tex. Jan. 11, 2017) ............... 5,10,14

*Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008) 556 U.S. 1129 (2009) ...................... 13,16

*Houston v. U.R.S. Corp.*, 591 F.Supp.2d 827 (E.D. Va. 2008).............................................................11

*In re Penthouse Exec. Club Comp. Litig.*, 10 Civ. 1145(NRB), 2010 WL 4340255 (S.D.N.Y. Oct. 27, 2010)
.............................................................................................................................................11

*Jackson v. New York Tel. Co.*, 163 F.R.D. 429 (S.D.N.Y. 1995) ................................................... 4-5

*Jaso v. Bulldog Conn. Specialists LLC*, C.A. 2:15-cv-269 (S.D. Tex. Oct. 15, 2015) ...............................22

*Johnson v. Canal Barge Company*, CA 3:12-cv-00037 (S.D. Tex. Nov. 20, 2012) ..........................................7

*Jones v. Cretic Energy Servs., LLC*, Civ. A. No. H-15-0051, 2015 WL 8489978 (S.D. Tex. Dec. 9, 2015)
......................................................................................................................................*passim*

*Jirak v. Abbott Labs., Inc.*, 566 F.Supp.2d 845 (N.D. Ill. 2008).......................................................8

*Karna v. BP Corp. N. Am., Inc.*, Civ. A. No. H-12-0101, 2013 WL 1155485 (S.D. Tex. Mar. 19, 2013)
..............................................................................................................................................16

*Labrie v. UPS Supply Chain Sols., Inc.*, C.A. C08-3182 PJH, 2009 WL 723599 (N.D. Cal. Mar. 18, 2009)
..............................................................................................................................................11

*Lang v. DirecTV, Inc.*, 735 F. Supp. 2d 421 (E.D. La. 2010) ..................................................... 5, 15

*Lee v. ABC Carpet & Home*, 236 F.R.D. 193 (S.D.N.Y. 2006).....................................................................11

*Lemus v. Burnham Painting & Drywall Corp.*, C.A. 2:06-cv-01158, 2007 WL 1875539 (D. Nev. Jun. 25,
2007)..................................................................................................................................... 11,13

*Lima v. Int'l Catastrophe Sols., Inc.*, 493 F.Supp.2d 793 (E.D. La. 2007) ......................................................11

*McCaffrey v. Mortgage Sources, Corp.*, C.A. 08-2660-KHV, 2009 WL 2778085 (D. Kan. Aug. 27, 2009).11

*McKnight v. D. Houston, Inc.*, 756 F.Supp.2d 794, 804 (S.D. Tex. 2010) .............................................11-12

*McPherson v. LEAM Drilling Systems, LLC*, No. 4:14-CV-02361 (S.D. Tex. Mar. 30, 2015) .................17

*Meseck v. TAK Comms., Inc.*, C.A. 10-965, 2011 WL 1190579 (D. Minn. Mar. 28, 2011) ......................13

*Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-16 (5th Cir. 1995) ..............................................*passim*

*Montoya v. S.C.C.P. Painting Contractors, Inc.*, C.A. CCB-07-455, 2008 WL 554114 (D. Md. Feb. 26,
2008)......................................................................................................................................11

*Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992) ...............................................16-17

*Nerland v. Caribou Coffee Co., Inc.*, 564 F.Supp.2d 1010 (D. Minn. 2007)....................................................10

*Nieddu v. Lifetime Fitness, Inc.*, 977 F.Supp.2d 686, 690 (S.D. Tex. 2013) ......................................................11

*Ortiz v. Rain King, Inc.*, C.A. 4:02-cv-04012, 2003 WL 23741409 (S.D. Tex. Mar. 10, 2003)............ 6, 20

*Prejean v. O'Brien's Resp. Mgmt., Inc.*, C.A. Nos. 12-1045, 12-1716, 12-1533, 2013 WL 5960674 (E.D.
La. Nov. 6, 2013)...............................................................................................................10, 13-14

*Putnam v. Galaxy 1 Mktg., Inc.*, 276 F.R.D. 264 (S.D. Iowa 2011) .....................................................13

*Quinteros v. Sparkle Cleaning, Inc.*, 532 F.Supp.2d 762 (D. Md. 2008) ........................................11

*Rodriguez v. Stage 3 Separation, LLC*, C.A. 5:14-cv-603-RP (W.D. Tex. Mar. 16, 2015) ...........................21

*Roussell v. Brinker Intern., Inc.*, 441 Fed.Appx. 222 (5th Cir. 2011) ........................................9-10

*Russell v. Illinois Bell Tel. Co.*, 575 F.Supp.2d 930 (N.D. Ill. 2008) ........................................8

*Sandoz v. Cingular Wireless LLC*, 553 F.3d 913 (5th Cir. 2008) ........................................5

*Scovil v. FedEx Ground Package Sys., Inc.*, 811 F.Supp.2d 516 (D. Me. 2011) ........................................13

*Sealey v. EmCare, Inc.*, C.A. 2:11-cv-00120 (S.D. Tex. Mar. 28, 2012) ........................................10

*Solis v. Hooglands Nursery, L.L.C.*, 372 F.App'x 528, 529 (5th Cir. 2010) ........................................9

*Sperling v. Hoffmann-La Roche, Inc.*, 118 F.R.D. 392 (D. N.J. Jan. 5, 1988) ........................................8

*Tolentino v. C&J Spec-Rent Services, Inc.*, C.A. 2:09-cv-00326, 2010 WL 2196261 (S.D. Tex. May 26, 2010) ........................................5

*Tony & Susan Alamo Found. v. Sec'y of Labor,* 471 U.S. 290, 296, 105 S.Ct. 1953, 85 L.Ed.2d 278 (1985) ........................................7

*Tucker v. Labor Leasing, Inc.*, 872 F.Supp. 941 (M.D. Fla. 1994) ........................................4

*Turner v. Nine Energy Service, LLC*, Civ. A. No. H-15-3670, 2016 WL 6638849 (S.D. Tex. Oct. 4, 2016) ........................................*passim*

*United States v. Rosenwasser*, 323 U.S. 360 (1945) ........................................17

*Vargas v. The Richardson Trident Co.*, CA H-9-1674, 2010 WL 730115 (S.D. Tex. Feb. 22, 2010) ...........5

*Villareal v. St. Luke's Episcopal Hospital,* 751 F.Supp.2d 902, 915-16 (S.D. Tex. 2010) ...........7

*Villatoro v. Kim Son Restaurant, LP,* 286 F. Supp. 2d 807 (S.D. Tex. 2003) ........................................5-6

*Westbrook v. Advanced Solids Control, LLC*, No. 2:14-cv-131 (S.D. Tex. Jan. 5, 2015) ...........10

*Westfall v. Kendle Intern., CPU, LLC*, No. 1:05-cv-00118, 2007 WL 486606 (N.D. W.Va. Feb. 15, 2007) ........................................11

*White v. Integrated Electronic Technologies, Inc.*, No. 11-2186,12-359, 2013 WL 2903070 (E.D. La. June 13, 2013) ........................................12,15

*Zook v. W&W Energy Svcs., Inc.*, No. 7:15-cv-00201-RAJ-DC, (W.D. Tex. May 5, 2016) ...........22

## Regulations

29 C.F.R. § 541 ........................................*passim*

29 C.F.R. § 778.112 ........................................1,8

29 U.S.C. § 201 ........................................*passim*

29 U.S.C. § 203 ........................................16

29 U.S.C. § 216 ........................................*passim*

## A.   INTRODUCTION

Plaintiff Darvin McAfee ("McAfee" or "Plaintiff") worked for Defendant Pioneer Natural Resources Company ("Pioneer" or "Defendant"), regularly working more than twelve-hour days for weeks at a time. Pioneer paid McAfee for these long hours on a day-rate basis, paying him a flat amount for all of the hours that he worked in a single day, even though day-rate workers are entitled to overtime under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, 29 C.F.R. § 778.112. McAfee's claims are straightforward: Pioneer's compensation plan for its day-rate workers violated the FLSA because it failed to pay these workers overtime.

McAfee seeks conditional certification under the FLSA and authorization to send notice to other putative plaintiffs so that they have the opportunity to learn of (and potentially join) this matter before their statutes of limitations expire. Specifically, McAfee asks that the Court conditionally certify a class consisting of:

> All persons who worked for Pioneer Natural Resources Company as Wellsite Consultants (including Drilling Supervisors, Completions Supervisors, and Production Supervisors) who were classified as independent contractors and paid a day-rate at any time from _____, 2014[1] to the present.

Because Pioneer denied McAfee and the putative class of day-rate workers overtime under its uniform compensation policy, these workers are similarly situated.[2] The Court should thus allow McAfee to send Court-approved notice of this action to the putative class members informing them of their rights and providing them the opportunity to make a claim for unpaid wages.

---

[1] This date represents three years back from the date that any Court-approved Notice and Consent form is distributed to potential class members.

[2] Although the Parties disagree as to the proper classification and employment status of the Wellsite Supervisors, this issue is not before the Court at this time as it goes to the merits of this case. A disagreement about the merits of McAfee's claims is not grounds for denying conditional certification. It is well-established that courts should not engage in merits-based analyses at the notice stage of a collective action (where this case is now).

**B.**   **FACTUAL BACKGROUND**

**1.   Procedural History.**

McAfee filed this collective action against Pioneer on behalf of himself and other similarly situated workers on November 8, 2016, for unpaid overtime pursuant to the FLSA. (Doc. 1). McAfee contends Pioneer unlawfully employed certain Wellsite Consultants (including Drilling Supervisors, Completions Supervisors, and Production Supervisors) as independent contractors and failed to pay overtime for hours worked over 40 hours in a single workweek. *Id.* Pioneer filed an answer on January 9, 2017, and denied liability claiming, among other things, that it did not employ McAfee or the other Wellsite Consultants and that these workers are exempt under the executive, administrative, professional, and highly compensated exemptions (Doc. 7).

**2.   Relevant Facts.**

Pioneer is an oil and gas exploration and production company operating throughout the United States, including in Texas.[3] Doc. 1 at p. 3, ¶ 15. Pioneer maintains significant exploration, development, production, and marketing activities throughout the United States and employs thousands of workers at dozens of locations. In order to provide services to many of its customers, Pioneer employs certain Wellsite Consultants (including Drilling Supervisors, Completions Supervisors, and Production Supervisors) on a day-rate basis who it classifies as independent contractors.

McAfee worked exclusively for Pioneer as a Wellsite Consultant (often referred to a "Company Man") for approximately a year. Declaration of Darvin McAfee, attached herein as Exhibit 1 at ¶ 2. Even though notice has yet to go out, additional Wellsite Consultants like McAfee have opted-in as plaintiffs to this matter. *See, e.g.,* Doc. 5 (Rodney Fisher Consent); Declaration of

---

[3] *See also,* http://www.pxd.com/about/profile.

Rodney Fisher, attached herein as <u>Exhibit 2</u> at ¶ 2.  McAfee and the other Wellsite Consultants' primary job was to ensure that operations adhered to Pioneer company polices and that the well was drilled, completed, or put in production in accordance with Pioneer's specifications. Ex. 1 at ¶¶ 18-, 22; Ex. 2 at ¶¶ 11-15. The Wellsite Supervisors all also conducted safety meetings, coordinated third-party contractors, completed daily reports on Pioneer company forms, and assisted with manual operations such as rigging up equipment. Ex. 1 at ¶¶ 23-25; 32; Ex. 2 at ¶¶ 16-18; 25. Pioneer represented to third-party contractors that the Wellsite Supervisors, or "Company Men" were, for all purposes, Pioneer and they possessed the ultimate authority to start and stop work, remove workers, and alter the overall processes being undertaken on the rig. Ex. 1 at ¶¶ 26-27; Ex. 2 at ¶¶ 19-20. All of the Wellsite Consultants performed the same general job duties for each aspect of the life of the well – drilling, completions, and production. Ex. 1 at ¶¶ 36-37; 40-42; Ex. 2 at ¶¶ 29-30; 33; 35.

Pioneer paid its Wellsite Consultants on a day-rate basis and classified them as independent contractors. Ex. 1 at ¶¶ 3; 28; 39; Ex. 2 at ¶¶ 3; 21; 32. Pioneer scheduled the days and hours these workers were required to work, provided the equipment necessary to perform their job duties, instructed them how to perform their job duties, required them to use company forms and checklists to complete their work, and supervised their performance. Ex. 1 at ¶¶ 13-17; 35; 38; 44-45; Ex. 2 at ¶¶ 6-10; 28; 31; 37-38. Pioneer compensated McAfee and the putative class members on a day-rate basis, paying them a flat sum of money (and sometimes a per diem) for every day that they worked regardless of the number of hours that they worked in a day. Ex. 1 at ¶¶ 3; 28; 39; Ex. 2 at ¶¶ 3; 21; 32.

Even though Pioneer classified the Putative Class Members as independent contractors, Pioneer dictated the amount of the day-rate paid to these workers, which was non-negotiable, and required them to work through a staffing company in order to be paid. Ex. 1 at ¶¶ 29-30; Ex. 2 at ¶¶ 22-23. Pioneer scheduled the day-rate workers to work 12-hour shifts on the days that they worked

(often for weeks at a time) but these workers often ended up working longer. Ex. 1 at ¶¶ 14-15; 38; Ex. 2 at ¶¶ 7-8; 31. Despite regularly working over 84 hours in a week and despite being economically dependent on Pioneer, McAfee and the Wellsite Consultants did not receive overtime compensation under Pioneer's day-rate plan. *Id.*; *see also,* Ex. 1 at ¶ 35; Ex. 2 at ¶ 28. These workers also did not receive any guaranteed amount of money for the weeks that they worked--a practice which is fatal to Pioneer's purported exemption defense. Ex. 1 at ¶ 31; Ex. 2 at ¶ 24.

## C.   ARGUMENT & AUTHORITIES

McAfee seeks conditional certification for an FLSA class consisting of:

> All persons who worked for Pioneer Natural Resources Company as Wellsite Consultants (including Drilling Supervisors, Completions Supervisors, and Production Supervisors) who were classified as independent contractors and paid a day-rate at any time from _____, 2014[4] to the present.

### 1.  Conditional Certification is Warranted When Employees are "Similarly Situated."

The FLSA's "collective action" provision allows one or more employees to bring an action for overtime compensation on "behalf of himself or themselves and other employees similarly situated." 29 U.S.C. §216(b). Under FLSA section 216(b), an employee need only show that he is suing his employer for himself and on behalf of other employees "similarly situated." *Mooney v. Aramco Servs. Co.,* 54 F.3d 1207, 1213-16 (5th Cir. 1995); *Grayson v. K-Mart Corp.,* 79 F.3d 1086, 1096 (11th Cir. 1996), *cert. denied,* 117 S. Ct. 435 (1996); *D'Anna v. M/A-Com, Inc.,* 903 F.Supp. 889, 893 (D. Md. 1995). The plaintiff's claims need not be **identical** to the potential opt-ins, but need only be **similar**. *Grayson,* 79 F.3d at 1096; *Tucker v. Labor Leasing, Inc.,* 872 F.Supp. 941, 947 (M.D. Fla. 1994). A plaintiff need only to demonstrate "a reasonable basis" for the allegation that a class of similarly situated persons may exist. *Grayson,* 79 F.3d at 1097; *see Jackson v. New York Tel. Co.,* 163 F.R.D. 429,

---

[4] This date represents three years back from the date that any Court-approved Notice and Consent form is distributed to potential class members.

431 (S.D.N.Y. 1995) (finding plaintiffs to be similarly situated when they together were alleged victims of a "common policy or scheme or plan that violated the law"). As the Southern District of Texas explained:

> [T]he court need not find uniformity in each and every aspect of employment to determine [that] a class of employees is similarly situated. The remedial nature of the FLSA and § 216 militate strongly in favor of allowing cases to proceed collectively.

*Tolentino v. C&J Spec-Rent Services, Inc.*, C.A. 2:09-cv-00326, 2010 WL 2196261, at *4 (S.D. Tex. May 26, 2010) (*citing Albanil v. Coast 2 Coast, Inc.*, C.A. 4:08-cv-00486, 2008 WL 4937565, at *3 (S.D. Tex. Nov. 17, 2008)).

### 2. The Fifth Circuit Uses the Two-Stage *Lusardi* Approach—a <u>Lenient</u> Notice Standard Typically Resulting in Conditional Certification.

In the Fifth Circuit, the "typical" method for administering collective actions is the "two-step" *Lusardi* approach. *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 915 n.2 (5th Cir. 2008); *Lang v. DirecTV, Inc.*, 735 F. Supp. 2d 421, 434-435 (E.D. La. 2010). Under the *Lusardi* approach, the court "determines whether the putative class members' claims are sufficiently similar" to authorize notice to potential class members. *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 519 (5th Cir. 2010) (citing *Mooney*, 54 F.3d at 1213-14 ). Because the first step takes place prior to discovery, the standard for notice "is a lenient one" which typically results in the conditional certification of the representative class.[5]

---

[5] *See, e.g., Mooney*, 54 F.3d at 1214; *Hernandez v. Taylor Safety Consulting, LLC*, No. 2:16-cv-00198, Min. Entry dated Jan. 11, 2017 (S.D. Tex. Jan. 11, 2017) (Ramos, J.) (conditionally certifying FLSA class of day-rate workers classified as independent contractors); *Blake v. Hewlett-Packard Co.*, No. 4:11-CV-592, 2013 WL 3753965, at *4 (S.D. Tex July 11, 2013) (Harmon, J.); *Coffin v. Blessey Marine Servs., Inc.*, Civ. A. No. H-11-0214, 2011 WL 1103795, at *2 (S.D. Tex. Mar. 23, 2011) (Atlas, J.); *Vargas v. The Richardson Trident Co.*, CA H-9-1674, 2010 WL 730115, at *7 (S.D. Tex. Feb. 22, 2010) (Harmon, J.) (noting the certification of collective actions is subject to a two-step process with a lenient standard that typically results in conditional certification of a representative class)*; Cantu v. Vitol, Inc.*, CA H-09-0576, 2009 WL 5195918, at *3 (S.D. Tex. Dec. 21, 2009) (Rosenthal, J.) *Foraker v. Highpoint Southwest Servs., L.P.*, CA. H- 06-1856, 2006 WL 2585047, at *3 (S.D. Tex. Sept 7, 2006) (Atlas, J.); *Villatoro,*286 F. Supp. 2d at 810 (granting certification with only a minimal preliminary showing that the putative class members were similarly situated based on testimony and pay stubs); *Dreyer v. Baker Hughes Oilfield Operations, Inc.*, C.A.. 4:08-cv-01212, 2008 WL 5204149, at *1 (S.D. Tex. Dec. 11, 2008) (Smith, M.J.) (noting that review at the notice stage is lenient and plaintiffs must show only that there is some factual

Indeed, in deciding whether to issue notice courts only require "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Mooney*, 54 F.3d at 1214, n.8; *Heeg v. Adams Harris, Inc.*, 907 F.Supp.2d 856, 862 (S.D. Tex. 2012) (Rosenthal, J.). Plaintiff meets its burden showing that there are similarly situated employees who are potential claimants by making "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *See Mooney*, 54 F.3d at 1214, n. 9; *Villatoro*, 286 F. Supp. 2d at (stating that notice is appropriate where plaintiff demonstrates that potential class members were together the victims of a particular alleged policy or practice). Further, the plaintiff need only demonstrate "a reasonable basis" that a class of similarly situated persons exists. *Grayson*, 79 F.3d at 1097; *see, e.g., Ortiz v. Rain King, Inc.,* C.A. 4:02-cv-04012, 2003 WL 23741409 (S.D. Tex. Mar. 10, 2003) (one declaration and the complaint sufficient).

Although McAfee has presented evidence of additional individuals' desire to opt-in to the lawsuit (*see, e.g.*, Doc. 5), this is not required at the notice stage and the fact that multiple individuals have not yet opted-in at this early stage does preclude conditional certification. *See, e.g., Garcia v. Primoris Servs. Corp.*, et al, No. 2:14-cv-00198, Doc. No. 21 (S.D. Tex. Nov. 12, 2014) (Ramos, J.) (granting nationwide collective action in FLSA matter involving oilfield employees where no workers other named plaintiff had joined the lawsuit based on the pleadings and named plaintiff's declaration). Courts do not require multiple opt-in plaintiffs at the notice stage; this is because such a requirement would impose a higher standard of proof than necessary in collective actions. This is precisely why employers' attempts to impose such a requirement is routinely rejected by courts in this District because: (1) it is not a statutory requirement; (2) it has not been adopted by higher courts; (3) it is at odds with the Supreme Court's command that the FLSA be liberally construed to

---

basis for trying their cases together with the cases of other potential members.).

effect its purposes; and (4) it is really more of a "numerosity" issue under Fed. R. Civ. P. 23, than a conditional certification issue.[6]

> As Magistrate Judge Johnson eloquently stated in *Villareal v. St. Luke's Episcopal Hospital*:
>
> The court agrees that a plaintiff need not present evidence at this stage of the third element, that aggrieved individuals actually want to opt in to the lawsuit. There are several reasons for this. First, as already stated, this element is not a statutory requirement at this stage. *See* 29 U.S.C. § 216(b). Second, this element has not been required, or even discussed, by any higher court opinion that this court has been able to find or to which the parties have cited. Rather, the Fifth Circuit's discussion of the *Lusardi* approach only requires, at the first stage, that "putative class members' claims are sufficiently similar to merit sending notice of the action to possible members of the class." *See Acevedo*, 600 F.3d at 519 (citing *Mooney*, 54 F.3d at 1213–14). Third, unlike under <u>Rule 23</u>, there is no numerosity requirement in a FLSA class action lawsuit under the <u>Lusardi</u> approach. *See, e.g., Badgett v. Tex. Taco Cabana, L.P.*, No. Civ. A.H 05–3624, 2006 WL 367872, at *2 (S.D. Tex. Feb. 14, 2006) (Lake, J.) (unpublished) (citing *Mooney*, 54 F.3d at 1214 & n. 8) (stating that "at the notice stage [in a FLSA action using the *Lusardi* approach], courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan" (internal quotations omitted)). Fourth, this element, requiring evidence of purported class members who are willing to join a class action before an appropriate class is even determined, is dissonant with the Supreme Court's directive that the FLSA be liberally construed to effect its purposes. *See Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 296, 105 S.Ct. 1953, 85 L.Ed.2d 278 (1985). Liberally construing the FLSA to effect its purposes, the court finds that it is enough for the plaintiff to present evidence that there may be other aggrieved individuals to whom a class action notice should be sent, without requiring evidence that those individuals actually intend to join the lawsuit.

751 F.Supp.2d 902, 915-16 (S.D. Tex. 2010) (Johnson, M.J.).

---

[6] *See, e.g., Coffin v. Blessey Marine Servs., Inc.*, No. H-11-0214 (S.D.Tex. July 28, 2011) (Atlas, J.) (noting that there was no evidence that any other employees aside from the plaintiff had knowledge of the lawsuit and granting conditional certification despite no showing of additional individuals desiring to join); *Argo v. Precision Drilling Co., LP*, Civ. A. No. 4:15-CV-00604, 2015 WL 9319233, at *1 (S.D. Tex. Dec. 23, 2015) (Smith, M.J.); *Jones v. Cretic Energy Servs., LLC*, Civ. A. No. H-15-0051, 2015 WL 8489978, at *4 (S.D. Tex. Dec. 9, 2015) (Lake, J.) (holding that a plaintiff need not present evidence of a desire of individuals to opt-in to the lawsuit at the notice stage because requiring such evidence before an appropriate class has even been defined conflicts with the Supreme Court's directive); *Johnson v. Canal Barge Company*, CA 3:12-cv-00037 (S.D. Tex. Nov. 20, 2012) (Granting certification filed by a single plaintiff with no opt-ins); *Bryant v. Am. Commercial Lines, LLC*, G-11-297 (S.D. Tex. Feb. 24, 2012)(granting certification filed by a single plaintiff with no opt-ins); *Gibson v. NCRC, Inc.*, No. H-10-1409, 2011 WL 2837506, at *7 (S.D. Tex. July 18, 2011) (Rosenthal, J.) (rejecting employer's argument that plaintiff was required to show other interested individuals before notice is issued because it creates a "chicken and egg" problem and granting conditional certification); *Dreyer v. Baker Hughes Oilfield Operators, Inc.*, Civ. A. No. H-08-1212, 2008 WL 5204149, at *3 (S.D. Tex. Dec. 11, 2008) (rejecting argument that FLSA collective action can be certified only if the plaintiff proves that others are interested in opting in to the lawsuit).

A court may deny plaintiff's right to proceed collectively only if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice. *Coffin*, 2011 WL 1103795, at *2. Doing otherwise would unnecessarily hinder the development of collective actions and would undermine the "broad remedial goals" of the FLSA. *Garner v. G.D. Searle*, 802 F. Supp. 418, 422 (M.D. Ala. 1991); *Sperling v. Hoffmann-La Roche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. Jan. 5, 1988) ("[N]otice to absent class members need not await a conclusive finding of 'similar situations.' "). Ultimately, allowing early notice and full participation by the opt-ins "assures that the full 'similarly situated' decision is informed, efficiently reached, and conclusive." *Sperling v. Hoffmann-La Roche, Inc.*, 118 F.R.D. 392, 406 (D.N.J. Jan. 5, 1988). Once the notice and opt-in period is complete, the court will have the benefit of knowing the actual makeup of the class. Thus, early notice helps courts to manage the case because it can "ascertain the contours of the action at the outset." *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 172 (1989).

At the second step, "following the completion of the opt-in process and further discovery, the defendant may ask the Court to reevaluate the conditional certification to determine whether there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis." *Russell v. Illinois Bell Tel. Co.*, 575 F.Supp.2d 930, 933 (N.D. Ill. 2008) (quoting *Jirak v. Abbott Labs., Inc.*, 566 F.Supp.2d 845, 847 (N.D. Ill. 2008)).

### 3.  McAfee is Similarly Situated to Pioneer's Wellsite Consultants.

Pioneer's day-rate policy failed to compensate employees for overtime worked, making McAfee and all putative class members paid under its day-rate plan are similarly situated. The Department of Labor regulations concerning day-rate plans require employers to pay day-rate workers for overtime hours worked. 29 C.F.R. § 778.112. Specifically, Regulation 778.112 states:

> If the employee is paid a flat sum for a day's work or for doing a particular job, without regard to the number of hours worked in the day or at the job, and if he receives no other form of compensation for services, his regular rate is determined by totaling all the sums received at such day rates or job rates in the workweek and

dividing by the total hours actually worked. **He is then entitled to extra half-time pay at this rate for all hours worked in excess of 40 in the workweek**.

*Id.* (emphasis added). Failure to pay overtime compensation on a day-rate plan for hours worked over 40 in a workweek is a violation of the FLSA. *Solis v. Hooglands Nursery, L.L.C.*, 372 F.App'x 528, 529 (5th Cir. 2010). Importantly, this type of violation is a *per se* violation of the FLSA and does not necessarily depend on the job title or job responsibilities of each particular plaintiff, though they are similar in this matter. *Tamez v. BHP Billiton Petroleum (Americas), Inc.*, No. 5:15-CV-330-RP, 2015 WL 7075971, at * 3 (W.D. Tex. Oct. 5, 2015) (Pitman, J.) (conditionally certifying class of day-rate workers classified as independent contractors regardless of job position where plaintiffs alleged they were paid a fixed amount per day without regard for the number of hours worked).

McAfee has presented sufficient evidence showing that he and the other Wellsite Consultants were subject to the same policy or plan and performed similar job duties; thus, these workers are similarly situated under the lenient standard used at the notice stage. Pioneer paid McAfee and the putative class members on a day-rate basis and did not pay them overtime pay, even though they often worked 84 hours or more each week. *See, e.g.*, Ex. 1 at ¶¶ 14-15; 35; 38; Ex. 2 at ¶¶ 7-8; 28; 31. Pioneer maintained a common policy of not paying its Wellsite Consultants overtime in direct violation of the FLSA. *Id.* It is Pioneer's day-rate policy that forms the basis of McAfee's claims, and Pioneer's uniform application of this compensation scheme makes McAfee similarly situated to all other putative class members. *See* Ex. 1 at ¶¶ 3; 28; 39; Ex. 2 at ¶¶ 3; 21; 32

### 4. Pioneer's Anticipated Argument that Individualized Analyses are Required Does Not Preclude Conditional Certification.

Pioneer will likely argue that this case is inappropriate for certification by suggesting the inquiry is inherently "individualized" or "fact-intensive." But in evaluating conditional certification, while "[t]here is need for care in evaluating distinctions among employees … those distinctions must make a difference relevant to the legal issues presented." *Roussell v. Brinker Intern., Inc.*, 441 Fed.Appx.

222, 226-27 (5th Cir. 2011). The employer argument anticipated by McAfee – that no two workers are alike and the Court must undertake an individualized, person-by-person analysis to resolve the case – is undermined by the fact that Pioneer uniformly classified a distinct group of Wellsite Consultants as independent contractors and paid them a day-rate without examining each individual's job duties, pay, or other employment/economic realities provisions.

As a result, the putative class members' claims are based on a "single decision, policy, or plan" – that Pioneer unlawfully misclassified its Wellsite Consultants as independent contractors in an effort to avoid paying them overtime, in violation of the FLSA. *See Mooney,* 54 F.3d at 1214 n.8 (5th Cir. 1995); *see also Nerland v. Caribou Coffee Co., Inc.*, 564 F.Supp.2d 1010, 1024 (D. Minn. 2007) ("The Court finds it disingenuous for [defendant], on one hand, to collectively and generally decide that all store managers are exempt from overtime compensation without any individualized inquiry, while on the other hand, claiming the plaintiffs cannot proceed collectively to challenge the exemption.").

### 5.  Independent Contractor Misclassification Cases are Well-Suited for Certification.

Courts in this Circuit have routinely found allegations of misclassification as independent contractors to be a common policy or plan for purposes of conditional certification. *See, e.g.*, *Hernandez v. Taylor Safety Consulting, LLC*, No. 2:16-cv-00198, Min. Entry dated Jan. 11, 2017 (S.D. Tex. Jan. 11, 2017) (Ramos, J.) (day-rate safety technicians); *Tamez,* 2015 WL 7075971 (day-rate workers); *Westbrook v. Advanced Solids Control, LLC*, No. 2:14-cv-131, Doc. 22 (S.D. Tex. Jan. 5, 2015) (centrifuge technicians); *Hansen v. Total Screen Sols., Inc.*, No. 2:13-cv-00242, Doc. 96 (S.D. Tex. May 27, 2014) (solids control technicians); *Prejean v. O'Brien's Resp. Mgmt., Inc.*, Nos. 12-1045, 12-1716, 12-1533, 2013 WL 5960674 (E.D. La. Nov. 6, 2013) (day-rate oil spill workers); *Sealey v. EmCare, Inc.*, No. 2:11-cv-00120 (S.D. Tex. Mar. 28, 2012) (certified registered nurse anesthetists); *Botello v. COI Telecom, L.L.C.*, No. SA-10-CV-305-XR, 2010 WL 5464824 (W.D. Tex. Dec. 30, 2010) (Rodriguez, J.)

(field service technicians); *Lima v. Int'l Catastrophe Sols., Inc.*, 493 F.Supp.2d 793, 798-99 (E.D. La. 2007) (manual laborers).

Courts throughout the nation have reached the same conclusion. *See, e.g., In re Penthouse Exec. Club Comp. Litig.*, 10 Civ. 1145(NRB), 2010 WL 4340255, at *3-4 (S.D.N.Y. Oct. 27, 2010) (exotic dancers); *McCaffrey v. Mortgage Sources, Corp.*, No. 08-2660-KHV, 2009 WL 2778085, at *4-5 (D. Kan. Aug. 27, 2009) (loan officers); *Labrie v. UPS Supply Chain Sols., Inc.*, No. C08-3182 PJH, 2009 WL 723599, at *5 (N.D. Cal. Mar. 18, 2009) (delivery drivers); *Gayle v. Harry's Nurses Registry, Inc.*, No. 07 Civ. 4672 (CPS)(MDG), 2009 WL 605790, at *9-10 (E.D.N.Y. Mar. 9, 2009) (nurses); *Houston v. U.R.S. Corp.*, 591 F.Supp.2d 827, 833-34 (E.D. Va. 2008) (housing inspectors); *Quinteros v. Sparkle Cleaning, Inc.*, 532 F.Supp.2d 762, 772 (D. Md. 2008) (janitorial workers); *Montoya v. S.C.C.P. Painting Contractors, Inc.*, Civ. No. CCB-07-455, 2008 WL 554114 (D. Md. Feb. 26, 2008) (house painters); *Lemus v. Burnham Painting & Drywall Corp.*, No. 2:06-cv-01158, 2007 WL 1875539, at *4-5 (D. Nev. Jun. 25, 2007) (house painters); *Westfall v. Kendle Intern., CPU, LLC*, No. 1:05-cv-00118, 2007 WL 486606, at *8-9 (N.D. W.Va. Feb. 15, 2007) (house painters); *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 198 (S.D.N.Y. 2006) (carpet installation mechanics).

### 6.   Merits Issues are Not Relevant to a Decision on Conditional Certification.

A disagreement about the merits of McAfee's claims are not grounds for denying conditional certification. It is well established that "courts are not to engage in merits-based analysis at the notice stage of a collective action" because discovery has not yet occurred. *Heeg*, 907 F.Supp.2d at 861; *Walker*, 870 F.Supp.2d at 465; *Nieddu v. Lifetime Fitness, Inc.*, 977 F.Supp.2d 686, 690 (S.D. Tex. 2013) (Harmon, J.); *Coffin*, 2011 WL 1103795, at *3 (finding that arguments going to the ultimate merits question of an FLSA dispute were inappropriate at the notice stage of conditional certification and "not a persuasive basis to deny notice[.]"); *McKnight v. D. Houston, Inc.*, 756 F.Supp.2d 794, 804 (S.D. Tex. 2010) (Rosenthal, J.) ("neither stage of certification is an opportunity

for the court to assess the merits of the claim by deciding factual disputes or making credibility determinations.").

Merits-based decisions are inappropriate at the notice stage of conditional certification because certification at the notice stage is "conditional," and the Court may later choose to "decertify" the collective action upon a showing that the case lacks merit for a collective action (i.e., that the plaintiffs are not "similarly situated" under 29 U.S.C. § 216(b)). *Mooney*, 54 F.3d at 1214. Indeed, at the notice stage "it is not appropriate to require the plaintiff to produce evidence sufficient to survive summary judgment or to otherwise test the merits beyond the light burden of production to show potential class members are similarly situated." *McKnight*, 756 F.Supp.2d at 804.

Nor is it appropriate for a court to weigh the credibility of any declarations submitted relating to conditional certification at the notice stage. *See White v. Integrated Electronic Technologies, Inc.*, No. 11-2186,12-359, 2013 WL 2903070, at *6 (E.D. La. June 13, 2013) (noting that courts are not tasked with resolving issues going to the "weight and credibility of the declarations" at the notice stage). At the notice stage (where this case is now), the evidence presented by the plaintiff (including declarations) does not have to be evidence that would be admissible at trial since the court is not making a ruling on the merits and because the parties have not yet conducted discovery. *Turner v. Nine Energy Serv., LLC*, Civ. A. No. H-15-3670, ECF No. 29 at p. 12 (S.D. Tex. Oct. 4, 2016) (granting conditional certification of nationwide class of misclassified oil workers). And where a declarant indicates that the information contained in his declaration is based on his personal knowledge and that he learned of an employer's overtime policy from his work experience with the employer, conversations with other similarly employed workers, and familiarity with the employer's payroll practices, declarations cannot be considered conclusory. *Id.* at pp. 13-14.

The important point, rather, is that all of the merits issues and defenses raised by Pioneer's Answer can be resolved on a class-wide basis. *See* Doc. 7 at Aff. Defs. For example, Pioneer pleads

that it not the putative class members' employer, that its decisions were undertaken in good faith, that all putative class members' claims are barred by waiver/estoppel/ratification and that all putative class members were otherwise properly classified as exempt. *See, e.g., id.* at Aff. Defs Nos. 1-2, 10-16. By pleading defenses applicable to all Wellsite Consultants as a class, Pioneer acknowledges that these issues can be determined as an issue common to the class. *See Gee v. Suntrust Mortgage, Inc.,* No. C-10-1509-RS, 2011 WL 722111, at *3 (N.D. Cal. Feb. 18, 2011) (holding "[u]niform exemption classifications" and other "standardized corporate policies and procedures" represent relevant factors in evaluating class certification, as they may indicate employees' job duties are similar).

### 6.1. The Wellsite Consultants' Employment Status is a Merits-Based Determination and is Irrelevant at the Conditional Certification Stage.

Pioneer will likely argue that McAfee has not met the economic realities test[7] to show Pioneer misclassified the Wellsite Consultants as independent contractors. **This is a merits-based determination and is improper at the notice stage of conditional certification.** Courts regularly recognize that there is an inadequate record at the conditional certification stage to apply the economic realities factors and that these factors go to the ultimate issues of the case, and not whether notice should issue under the lenient similarly-situated analysis.[8]

---

[7] To determine whether an individual is an employee under the FLSA, the Fifth Circuit considers whether "as a matter of economic reality, the worker is economically dependent upon the alleged employer or is instead in business for himself." *Hopkins v. Cornerstone Am.,* 545 F.3d 338, 343 (5th Cir. 2008) *cert denied,* 556 U.S. 1129 (2009). To aid in this determination, the Court considers five non-exhaustive factors: (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the workers and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship. *Id.* No single factor is determinative. *Id.*

[8] *See, e.g., Prejean v. O'Brien's Resp. Mgmt., Inc.,* Nos. 12-1045, 12-1716, 12-1533, 2013 WL 5960674, at *7-8 (E.D. La. Nov. 6, 2013); *Scovil v. FedEx Ground Package Sys., Inc.,* 811 F.Supp.2d 516, 519 (D. Me. 2011); *Putnam v. Galaxy 1 Mktg., Inc.,* 276 F.R.D. 264, 274 (S.D. Iowa 2011) ("Defendants also urge the Court to look to the 'economic realities' of the working relationship…. Making a determination, at this time, … pursuant to the 'economic realities' test, would … improperly delve into the merits of Plaintiffs' claim."); *Meseck v. TAK Comms., Inc.,* No. 10-965, 2011 WL 1190579, at *6 (D. Minn. Mar. 28, 2011) ("Courts in this district and elsewhere consistently hold that such potential defenses and individualized inquiries should not prevent conditional certification at the notice stage and are more appropriately addressed through a decertification motion."); *Lemus v. Burnham Painting and Drywall Corp.,* No. 2:06-cv-01158-RCJ-PAL, 2007 WL 1875539, at *5 (D. Nev. Jun. 25, 2007) ("The fact intensive inquiries concerning whether the plaintiffs are

For this reason, the vast majority of courts located in this Circuit -- including this Court – have declined to apply the economic realities analysis at the notice stage of conditional certification because such an inquiry is better addressed at the decertification stage after discovery has occurred. *See, e.g.*, *Heeg*, 907 F.Supp.2d at 864 (Rosenthal, J.) (stating that courts located in this District "have typically declined to apply the economic realities factors or other individualized analyses at the conditional certification stage."); *Walker*, 870 F.Supp.2d at 471 (Ellison, J.) (stating that "the economic factors test is likely not appropriate for determination at the first stage of FLSA class certification"); *Prejean*, 2013 WL 590674, at *2 (conditionally certifying an FLSA class involving misclassification of independent contractors without undertaking an evaluation of the economic realities factors and stating that, "such an inquiry is better addressed at the decertification stage after discovery has occurred, when the court will be in a position to scrutinize all of the evidence in greater detail."); *Hansen v. Lauterbach*, No. 2:13-cv-00242 (S.D. Tex. Apr. 3, 2014) (Minute Entry Apr. 3, 2014) (Ramos, J.) (conditionally certifying an FLSA class of oilfield workers involving misclassification of independent contractors where plaintiff argued "[t]he Court does not have to conduct a detailed economic realities test analysis because it is a merits-based inquiry that courts decline to entertain at the conditional certification stage," at Doc. 77); *Hernandez v. Taylor Safety Consulting, LLC*, No. 2:16-cv-00198, Min. Entry dated Jan. 11, 2017 (S.D. Tex. Jan. 11, 2017) (Ramos, J.) (conditionally certifying class of safety technicians alleging they were misclassified as independent contractors and paid a day-rate); *Tamez*,  2015 WL 7075971, at * 5 (conditionally certifying class of all day-rate workers classified as independent contractors and refusing to analyze economic realities factors at conditional certification stage stating, "the Court need not resolve this issue now."); *Gonzales v. Tier One Sec., Inc.*, 2013 WL 1455587, at *2 (W.D. Tex. Apr. 8, 2013) (rejecting argument

---

independent contractors or employees … and … are sufficiently similarly situated to maintain the class are more appropriately decided after notice has been given, the deadline to opt in has passed, and discovery has closed.").

that determination on employer-employee relationship controlled conditional certification); *Lang v. DirecTV, Inc.*, C.A. No. 10-1085 "G"(1), 2011 WL 6934607, at *3 (E.D. La. Dec. 30, 2011) (Brown, J.) (conditionally certifying an FLSA class involving misclassification of independent contractors without undertaking an evaluation of the economic realities factors, stating that the court "need not decide at this juncture the exact nature of the employment relationship here," and that "the fact that questions remain about the employment status regarding the named plaintiffs and proposed class of plaintiff…*does not alter the present burden at the conditional certification stage* considered here."); *White v. Intergrated Elec. Techs., Inc.*, No. 11-2186, 2013 WL 2903070, at *5 (E.D. La. June 13, 2013) (Morgan, J.) (quoting *Lang*, 2011 WL 6934607, at *3).[9]

Even if it were appropriate for the Court to analyze whether the Wellsite Consultants are similarly situated under the economic realities factors at this stage (which it is not), under the lenient conditional certification standards McAfee meets this burden by merely providing some ***minimal*** initial evidence indicating the putative class members satisfy the economic realities factors. *Heeg*, 907 F.Supp.2d at 864-65 ("Even if this court were to apply the economic factors test, the plaintiffs have presented some initial evidence that the independent contractors have satisfied the five factors[.]"); *Walker*, 870 F.Supp.2d at 471 (noting that even if the economic realities test applied at the conditional certification phase that plaintiff presented sufficient evidence that putative class members were similarly situated wherein plaintiff put forth "minimal" evidence). The Court need only look at the record to see whether some minimal evidence exists showing that the day-rate workers were similarly situated under the economic realities factors and if such minimal evidence is present, the Court must conditionally certify the FLSA class. Here, McAfee has provided ample

---

[9] Neither this Court in *Heeg* or Judge Ellison in *Walker* conducted a substantive analysis of the economic realities factors. Instead, both courts simply noted in their respective orders granting conditional certification that the plaintiffs had put forth ***minimal*** initial evidence supporting the economic factors, like McAfee has done herein. *Heeg*, 907 F.Supp.2d at 865; *Walker*, 870 F.Supp. 2d at 471.

evidence to meet this low threshold. *See, e.g.*, Exs. 1-2.

Here, although a merits-based analysis of Pioneer's classification of McAfee and the other Wellsite Consultants is improper at this stage, McAfee has more than met any lenient burden he may have to put forth some minimal initial evidence indicating the putative class members satisfy the economic realities factors. *See, e.g.*, Exs. 1-2. Specifically, McAfee has put forth sufficient evidence showing that: (a) Pioneer controlled the putative class members, including their job assignments, schedules, hours worked, job duties, and pay; (b) the putative class members were financially dependent on Pioneer; (c) little-to-no financial investment from putative class members was required; and (d) no unique skill was required. *Id.*

Even though the issue of classification is irrelevant at the notice stage, it is worth noting that the employer-employee relationship under the FLSA is broadly defined and includes an expansive definition of who qualifies as an employee. *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992) (the FLSA "stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles."); *Hopkins*, 545 F.3d at 343; *Karna v. BP Corp. N. Am., Inc.*, Civ. A. No. H-12-0101, 2013 WL 1155485 at *8 (S.D. Tex. Mar. 19, 2013) (Ellison, J.); *see also*, U.S. Dept. of Labor Wage and Hour Division, *The Application of the Fair Labor Standards Act's "Suffer or Permit" Standards in the Identification of Employees Who Are Misclassified as Independent Contractors,* by David Weil, (U.S. Dept. of Labor's Administrative Interpretation No. 2015-1) (noting that the FLSA's definition of "employ" has broad applicability, that most workers are employees under the FLSA's broad definitions, and the FLSA's "intended expansive coverage for workers must be considered when analyzing the economic realities factors to determine whether a worker is an employee or an independent contractor."), attached herein as Exhibit 3.

Indeed, the FLSA broadly defines "employ" as "to suffer or permit to work." 29 U.S.C. § 29 U.S.C. 203(g). Such a definition clearly covers more workers as employees than the former common

law test – so much so that the United States Supreme Court recognizes that the FLSA's definition of "employee" has "been given the broadest definition that has ever been included in any one act." *See, United States v. Rosenwasser*, 323 U.S. 360, 362-63 (1945); *Darden*, 503 U.S. at 326 (noting the "striking breadth" of the expansive definition of employee under the FLSA). For these reasons, doubtful questions regarding a worker's employment status must be resolved in favor of employment to serve the remedial purpose of the legislation involved. *Breaux v. Daigle, Inc. v. United States*, 900 F.2d 49, 52 (5th Cir. 1990).

### 6.2. An Analysis of Pioneer's Class-Wide Exemption Defenses is Irrelevant and Premature.

McAfee further anticipates that Pioneer will argue against conditional certification claiming that its Wellsite Consultants are exempt from overtime pay under the executive, administrative, professional, highly compensated and combination exemptions. *See* Doc. 7 at Aff. Defs. 11-16. By arguing these exemptions, Pioneer will likely make the standard defense argument against conditional certification – that no two workers are alike and that the Court must analyze each worker's job duties independently instead of as a group.

First, Courts routinely grant conditional certification without making factual determinations as to the merits of employers' exemption defenses and because exemption defenses "are merits-based defenses to FLSA claims that courts in this district typically hold to be irrelevant at this initial, notice stage of the case." *Jones v. Cretic Energy Servs., LLC*, 149 F.Supp. 761, 774 (S.D. Tex. Dec. 9, 2015) (Lake, J.); *Turner v. Nine Energy Service, LLC*, Civ. A. No. H-15-3670, 2016 WL 6638849, at *7 (S.D. Tex. Oct. 4, 2016) (Johnson, M.J.), *adopted at* 2016 WL 6652747 (S.D. Tex. Nov. 9, 2016) (Lake, J.); *McPherson v. LEAM Drilling Systems, LLC*, No. 4:14-CV-02361, Doc. 84 (S.D. Tex. Mar. 30, 2015) (Harmon, J.) (granting conditional certification of nationwide class of oilfield workers over employer's objections that individualized analyses were required due to various exemption defenses

and noting that employer could later move to decertify the class); *Dreyer v. Baker Hughes Operations, Inc.*, Civ. A. No. H-08-1212, 2008 WL 5204149, at * 2 (S.D. Tex. Dec. 11, 2008) (Smith, M.J.) (rejecting employer's argument that the application of multiple FLSA exemptions counseled against conditional certification because "exemptions are merits-based defenses to an FLSA claim" that "cannot defeat conditional certification."). And even if an exemption defense may apply to the case (they do not here), that is not enough to prevent conditional certification of a class. *Turner*, 2016 WL 6638849 at *7; *Dreyer*, 2008 WL 520419 at * 3.

Second, Pioneer's anticipated tactic also ignores the single-issue common to all of the exemptions Pioneer claims – the fact that each of these exemptions required Pioneer to pay the putative class members on a "salary basis." *See* 29 C.F.R. §§ 541.100(a)(1) (executive exemption requires salary basis); 541.200(a)(1) (administrative exemption requires salary basis); 541.300(a)(1) (professional exemption requires salary basis); 541.601(b)(1) (highly compensated employee exemption requires salary basis). But Pioneer did not pay these workers on a salary basis; instead, it paid them all a day-rate. Ex. 1 at ¶¶ 3; 28; 39; Ex. 2 at ¶¶ 3; 21; 32.

The FLSA regulations' definition of "salary basis," establishes a general rule that:

> An employee will be considered to be paid on a "salary basis" within the meaning of these regulations if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, **which amount is not subject to reduction because of variations** in quality or **quantity of the work performed**. [Subject to exemptions] an exempt employee must receive the full salary for any week in which the employee performs any work **without regard to the number of days or hours worked.**

29 C.F.R. § 541.602(a) (emphasis added). And it is well settled that an employee's earnings may only be computed on a daily basis without violating the salary-basis requirement if: (1) the employment arrangement includes a **guarantee of a minimum weekly amount of $455 paid irrespective of**

**the number of days worked**; and (2) a reasonable relationship exists between the guaranteed amount and the amount actually earned. 29 C.F.R. § 541.604(b) (emphasis added).

Pioneer does not guarantee the Wellsite Consultants a predetermined weekly (or less frequent) amount of $455 irrespective of days worked. Ex. 1 at ¶ 31; Ex. 2 at ¶ 24. In fact, the opposite is true. Pioneer only pays these workers a day-rate and sometimes a per diem for days that they actually worked. *Id.* The putative class members are paid only for time that they actually worked. But the regulation provides that salary pay "is not subject to reduction because of variations in the…quantity of the work performed" and that "an exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked." 29 C.F.R. § 541.602(a). Because Pioneer cannot meet the salary basis test, all of its Wellsite Consultants are non-exempt, regardless of their job duties or other individualized employment characteristics.

## D.    NOTICE & CONSENT PROCEDURE

To facilitate the Notice process and preserve the rights of those who have not yet opted-in, McAfee proposes the attached Notice and Consent Form for approval by the Court. *See* Exhibit 4. Variations of the proposed Notice and Consent Form have been adopted by courts in several districts throughout the United States, including in this District by this Court. The same is true of McAfee's proposed opt-in timeline:

| DEADLINE | SUBJECT |
|---|---|
| **10 Days From Order Approving Notice to Potential Class Members** | Defendant to disclose the names, last known addresses, email addresses (both personal and work, if available), phone numbers, and dates of employment of those described in the above-referenced group of Putative Class Members to be notified in a usable electronic format |

| DEADLINE | SUBJECT |
|---|---|
| 20 Days From Order Approving Notice to Potential Class Members | Plaintiff's Counsel shall send by mail and email the Court approved Notice and Consent Form to the Putative Class Members. |
| 60 Days From Date Notice is Mailed to Potential Class Members | The Putative Class Members shall have 60 days to return their signed Consent forms to Plaintiff's counsel for filing with the Court. |
| 30 Days from Date Notice is Mailed to Potential Class Members | Plaintiff's Counsel is authorized to send by mail and email a second identical copy of the notice/consent forms to the Putative Class Members via mail and email. Plaintiff may follow up with the Putative Class Members whose Notice Packet was returned as undeliverable with a phone call to obtain an updated address and/or email address to ensure receipt of the Notice packet.[10] |

## 1. The Production of Contact Information and the Issuance of Reminder Notices is Routine in FLSA Collective Actions.

McAfee requests the Court order Pioneer to provide his Counsel with the names, last known home addresses, email addresses (both personal and work, where available), and phone numbers for all of the putative class members. Courts in this District routinely require this information to facilitate the issuance of notice.[11] *See, Jones*, 149 F.Supp.3d at 775-76. The production of email addresses and the allowance of email notice is particularly important because the putative class

---

[10] Plaintiff's Counsel has included a proposed script similar to the scripts previously approved by Courts within this District. *See*, Ex. 4.

[11] *See, e.g., Dyson v. Stuart Petrol. Testers, Inc.*, 308 F.R.D. 510, 517 (W.D. Tex. 2015) (ordering production of names, addresses, email addresses, and phone numbers); *Beall v. Tyler Techs., Inc.*, No. Civ. A. 2-08-CV-422, 2009 WL 3064689, at *1 (E.D. Tex. Sept. 23, 2009) (granting class notice via email and compelling the employer to produce all email addresses, both personal and work); *Davis v. Westgate Planet Hollywood Las Vegas, LLC*, No. Civ. A. 2:08-CV-00722-RCJ-PAL, 2009 WL 102735, at * 15 (D. Nev. Jan. 12, 2009) (granting circulation of notice via U.S. mail and email); *Ortiz v. Rain King, Inc.,* C.A. 4:02-cv-04012, 2003 WL 23741409, at *1 (S.D. Tex. Mar. 10, 2003) (ordering the defendant to produce the names, addresses, and phone numbers of class in a readable computer format)*; Alba*, 2002 WL 32639827, at *1 (ordering the defendant to produce the full name, last known address, telephone numbers, dates and location of employment for prior three years); *see also Hoffmann-LaRoche*, 493 U.S. 165, 170 ("The District Court was correct to permit discovery of the names and addresses ….").

members all work for long periods of time in remote locations that are far away from home, and will eat, sleep, and work at or near the jobsite, making it difficult (or even impossible) to regularly receive mail. Ex. 1 at ¶ 47; Ex. 2 at ¶ 40.   For this reason, it is also important for the Court to issue a reminder notice, as is routinely done in similar cases involving oilfield workers. *Jones*, 149 F.Supp.3d at 776 (allowing an identical reminder notice where plaintiff identified a specific reason for needing a reminder notice (i.e., potential class members work at remote locations for extended periods of time), as here).

### 2. Email Notice Should be Provided to Putative Class Members.

Email notice has become an accepted – and even an embraced – form of notice in FLSA collective actions. *See Rodriguez v. Stage 3 Separation, LLC*, No. 5:14-cv-603-RP, Doc. 57, at *2 (W.D. Tex. Mar. 16, 2015) (Pitman, J.) (citing *Jones v. JGC Dallas LLC*, No. 3:11-CV-2743-O, 2012 WL 6928101, at *5 n.9 (N.D. Tex. Nov. 29, 2012)). Writing specifically about oilfield employees, Courts in this Circuit have explained that, "email notification can be particularly beneficial in situations where potential opt-in plaintiffs are away from home for extended periods of time." *Stage 3 Separation*, No. 5:14-cv-603-RP, Doc. 57, at *2. The court explained that email notice should be the rule in providing class notice:

> [I]n 2015 it should rarely be entertaining arguments about the appropriateness of email notice. Email is not the wave of the future; email is the wave of the last decade and a half. **Many people use their email address as their primary point of contact, and in almost every situation, more opt-in plaintiffs will be on notice of a pending collective action if the potential class members are also notified via email**.

*Id.* (emphasis added). In fact, Courts in this District, routinely order email notice because "notice by e-mail will more likely reach potential class members than regular mail sent to the home address …." and because email notice is "appropriate and necessary…beacause [it is] intended to further the broad remedial purposes of the FLSA by providing notice to employees whose work undisputedly requires them to travel to oilfields and stay away from home for days at a time. *Jones*, 149 F.Supp.3d

at 776; *Jaso v. Bulldog Conn. Specialists LLC*, No. 2:15-cv-269, Doc. 17, at *12 (S.D. Tex. Oct. 15, 2015); *Benzon v. National Oilwell Varco, L.P.*, Civ. A. No. 4:14-CV-02582, ECF No. 33 (S.D. Tex. June 18, 2015) (Bennett, J.) (granting conditional certification of a nationwide class of hourly oilfield workers based on a single declaration and allowing notice via email); *see also, Zook v. W&W Energy Svcs., Inc.*, No. 7:15-cv-00201-RAJ-DC, Doc. 21, at *7 (W.D. Tex. May 5, 2016) (Counts, Mag.); *Crow v. ProPetro Svcs., Inc.*, No. 7:15-cv-00149-RAJ-DC, Doc. 33, at *11 (W.D. Tex. May 4, 2016) (Counts, M.J.); *Dyson v. Stuart Petroleum Testers, Inc.*, 308 F.R.D. 510, 516-18 (W.D. Tex. 2015) (Pitman, J.).

### 3. McAfee Should be Allowed to Follow-up with Select Class Members by Telephone.

McAfee requests that the certification schedule in this matter accommodate the follow-up of putative class members by telephone if their mailed or emailed Notice and Consent Forms are returned as undeliverable. Employees who have left the employment of a company frequently do not provide their former employer with up-to-date contact information. *See Lopez v. WS Energy Svcs., LLC*, No. 2:15-cv-135, Doc. 33, at *3 (S.D. Tex. Oct. 15, 2015) (Libby, M.J.). As courts have noted, "telephone numbers … provide a more stable means of contacting a person who has moved than a mailing address." *Jaso v. Bulldog Conn. Specialists LLC*, No. 2:15-cv-269, Doc. 17 (S.D. Tex. Oct. 15, 2015) (citing *Dyson*, 308 F.R.D. at 516-17); *see also, Jones*, 149 F.Supp.3d at 776 (requiring oilfield employer to provide telephone numbers for purposes of distributing notice because it furthered the broad remedial purposes of the FLSA by providing notice to oilfield employees away from home for extended periods of time). For this reason, McAfee requests that the certification schedule accommodate follow-up telephone calls by Class Counsel to those putative class members whose contact information, during the course of the conditional certification schedule, is shown to be incorrect or no longer valid.

**4. McAfee Should be Allowed to Post Notice at Jobsite Trailers.**

McAfee requests that that Notice be posted at jobsite trailers where Defendant assigns the putative class members to work to further the remedial purposes of the FLSA. As courts in this District have noted, "[p]osting notice in a workplace is often used to inform employees of their rights in labor disputes, and has been approved as an appropriate form of notice in FLSA cases." *Jones*, 149 F.Supp.3d at 776 (holding it appropriate to post notice at the job site because plaintiffs worked in oilfields and would not be as likely to be able to receive notice at home and that posting at job sites would further the remedial nature of the FLSA); *Turner*, 2016 WL 6638849 at *9; *see also, Garcia v. TWC Admin., LLC*, No. SA:14-CV-985-DAE, 2015 WL 1737932, at *5 (W.D. Tex. Apr. 16, 2015).

**E.    CONCLUSION**

McAfee more than meets his minimal burden to provide "substantial allegations" to support his claims that he and other Wellsite Consultants employed by Pioneer as independent contractors who received a day-rate are similarly situated and that conditional certification and Court-authorized notice is warranted. Therefore, McAfee respectfully requests that the Court grant his Motion and approve his proposed Notice & Consent Form and opt-in procedures.

Respectfully Submitted,

By: */s/ Lindsay R. Itkin*
**Michael A. Josephson**
Fed. Id. 27157
State Bar No. 24014780
**Lindsay R. Itkin**
Fed Id. 1458866
State Bar No. 24068647
**FIBICH, LEEBRON, COPELAND
BRIGGS & JOSEPHSON**
1150 Bissonnet St.
Houston, Texas 77005
Tel: (713) 751-0025
Fax: (713) 751-0030
mjosephson@fibichlaw.com
litkin@fibichlaw.com

**AND**

**Richard J. (Rex) Burch**
Fed. Id. 21615
State Bar No. 24001807
**BRUCKNER BURCH, P.L.L.C.**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Tel: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

On March 10, 2017, I served a copy of this document on all registered parties and/or their counsel of record, via the Court's CM/ECF system.

*/s/ Lindsay R. Itkin*
Lindsay R. Itkin

## CERTIFICATE OF CONFERENCE

This motion is necessary because Plaintiff and Defendant cannot agree to the conditional certification of this matter.

_/s/ Lindsay R. Itkin_
Lindsay R. Itkin